·tion, however, is not before us. In this record it appears without dis-
·pute that the relationship existed, that it was within the prohibited
·degree, that the defendant knew of it during the trial, that neither the
·plaintiff nor his attorneys were cognizant of the relationship, and the
motion to obtain redress was made within the prescribed time.

The order should be reversed, with $10 costs and disbursements of
this appeal, and the motion to set aside the verdict granted. So or-
·dered. All concur, except McLENNAN, P. J., and KRUSE, J., who
dissent in an opinion by KRUSE, J.

KRUSE, J. (dissenting). I do not think it was intended by the
·amendment of 1883 to section 1166 of the Code of Civil Procedure to
·permit a party to an action to sit by at a trial and not inquire into the
relationship of jurors to his adversary, take the chances of a trial, and
·if beaten have the verdict set aside at any time within six months from
the rendition thereof, where it appears that he was not prejudiced
·thereby. While the provisions of section 1180 of the Code, requiring
an objection to the qualifications of a juror to be taken by challenge
·have been modified, so that the disqualification of a juror by reason of
·relationship to a party may be raised after verdict, as provided in the
·amendment to section 1166, that does not require or warrant a court in
setting it aside, if no harm has come to the party moving to set it
·aside. Such a disqualification of a juror is unlike that of a judge who
is related to one of the parties within the prohibited degree of rela-
·tionship. In the latter case a judgment rendered by a disqualified
judge is void, but not so as regards a disqualified juror. Neither un-
·der the common law nor under the statute has it ever been held that
·the verdict of a jury, of which one of its members is related to one of
the parties within the prohibited degree, is void. Salisbury v. Mc-
·Claskey, 26 Hun, 262; Stedman v. Batchelor, 49 Hun, 390, 3 N. Y.
Supp. 580; People v. Mack, 35 App. Div. 114, 54 N. Y. Supp. 698;
People v. Thayer, 132 App. Div. 593, 116 N. Y. Supp. 821.

I think the order refusing to set aside the verdict and denying the
·motion for a new trial should be affirmed.

---

BUTLER v. BUFFALO, R. & P. RY. CO. et al.

·(Supreme Court, Appellate Division, Fourth Department. January 11, 1911.)

1. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—BURDEN OF PROOF—
    CONTRIBUTORY NEGLIGENCE.
        A plaintiff suing for the negligent death of a servant has the burden
    of proving decedent's freedom from contributory negligence.

        [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 908;
    Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 281*)—INJURY TO SERVANT—CONTRIBUTORY NEG-
    LIGENCE—EVIDENCE.
        In an action for the death of a fireman in a head-on collision, evidence
    *held* to support a finding that decedent was guilty of contributory negli-

gence in failing to remember the train orders, and to call the attention thereto to the engineer and conductor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 993; Dec. Dig. § 281.*]

3. MASTER AND SERVANT (§ 243*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—DISOBEDIENCE OF ORDERS.

A right of action against a railroad company for the death of a fire man in a head-on collision resulting from the negligent failure of the conductor and engineer of the train on which the fireman worked to comply with train orders is defeated by the contributory negligence of the fireman in not remembering the orders and calling the attention thereto of the engineer and conductor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 761, 762, 766; Dec. Dig. § 243.*]

Kruse, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by William H. Butler, administrator of Benjamin Butler, deceased, against the Buffalo, Rochester & Pittsburg Railway Company and others. From a judgment for defendants, and from an order denying a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

E. D. Northrup and Charles Van Voorhis, for appellant.

Brown & Coleman and Harris, Havens, Beach & Harris, for respondents.

WILLIAMS, J. The judgment and order should be affirmed, with costs.

The action was for negligence. There was a head-on collision on the defendant's railroad, resulting in a death. The deceased was fireman upon the train extra 146. The defendant Goold was engineer and defendant Wilder was conductor on the same train. The engineer and conductor were united as defendants with the railroad company in the action. The accident resulting in the death occurred on the Rochester division of the railroad, just south of Warsaw, in the nighttime. The railroad was there a single track one. Train 146 left Lincoln Park, near Rochester, late in the afternoon. It was an extra, and therefore not on the time card, and could run only under special orders from the train dispatcher. It left Lincoln Park under order 99, directing it to run to Le Roy. At Le Roy it received order 122, which annulled order 99, and directed it to run from Le Roy to Ashford, meeting train 24 at D. L. & W. Junction, first 28 at Wyoming and second 28 at Warsaw, and then on its arrival at Warsaw it received order 138, which in no way annulled or interfered with order 122, but merely directed it to run ahead of train 31 from Warsaw to Gainesville, which was between Warsaw and Ashford. It was still under order 122 to run to Ashford, but from Warsaw to Gainesville it was to go ahead of train 31. When the operator at Warsaw delivered order 138 to the engineer and conductor, he remarked, "He wants you to hurry up and keep ahead of 31." This was not an order from the train dispatcher,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and could not be regarded as such. It was merely a suggestion made by the operator as to order 138 just delivered. There was nothing in it tending to show that train 146 was to leave Warsaw before second 28 arrived, but that they should hurry so far as to keep ahead of train 31. Both trains then lay at Warsaw, 146 ahead of 31. Orders 122 and 138 were then in force, and it was the duty of the engineer and conductor to obey them. Nevertheless, while second 28 had not arrived, these men boarded their train and took it out of Warsaw south. They met second 28 after going a few miles in a head-on collision, in which the fireman lost his life. The jury rendered a verdict for all the defendants. They could have had no doubt as to the negligence of the engineer and conductor, and that it caused the accident and the death of the fireman. They must have found, therefore, that the fireman was guilty of contributory negligence, or at least had not shown he was free from such negligence. Of course, if the verdict for the individual defendants was based on the contributory negligence of the fireman, the verdict would necessarily be for the railroad upon the same ground. Therefore we very naturally look to see how the plaintiff is to relieve himself from this charge of negligence on the part of the fireman. Unless he can do this successfully, it is not necessary to inquire whether the railroad was itself guilty of, or free from, negligence.

The court submitted this question of contributory negligence to the jury, charging them substantially if the fireman knew of these orders, that his train was to meet second 28 at Warsaw, that second 28 had not arrived, and still without any objection or suggestion to the engineer or conductor boarded the train and went with it to the collision, if by so doing he was guilty of negligence which contributed to the accident and his death, plaintiff could not recover. There was no exception to this submission to the jury of this element of the cause of action. The engineer testified before the coroner (and the evidence was read in behalf of the plaintiff here) that the fireman knew of the order 122, that he read it to him, and the fireman read it to himself and repeated it back to the engineer, and then the fireman and brakeman read it over together; and, when he got order 138 at Warsaw, he read it to the fireman, who repeated it back to the engineer just before they pulled out of the station. There was no contradiction of this evidence. The operating rules of the railroad required the engineer to communicate all train orders to the firemen, and required the firemen to be familiar with all special orders pertaining to their trains. It must be assumed, therefore, that the fireman had the same knowledge as the engineer and conductor had of the contents of order 122 and of 138. The requirement of order 122 that train 146 pass second 28 at Warsaw had not been annulled or suspended, and, as provided by the operating rules of the railroad, once, in effect, it continued so until annulled or suspended. The engineer testified that it was his duty to remain at Warsaw until the arrival of second 28, even if the conductor ordered him to go, so long as he had orders to meet second 28 there. And the conductor testified before the coroner (and his evidence was read in behalf of plaintiff here) that receiving order 138 kind of threw him off

a little. Second section of 28 kind of slipped his mind. There was 10 minutes that the train kind of slipped his mind. Nobody reminded him of it when he left Warsaw nor after. The fireman knew of these orders. They were read aloud in his presence. It was the duty of their train to meet second 28 at Warsaw. There was nothing connected with the clearance card to relieve these men from the charge of negligence. The card was not given to interfere with or countermand any orders they had and it was so stated in the card itself. The card permitted the train to proceed under its orders, although the semaphore was up, which would otherwise prevent the train passing it. In this case the semaphore held three trains back, and could not be lowered on account of the other two trains. The card did not direct or permit this train to leave Warsaw contrary to its orders.

It is unnecessary to argue that the engineer and conductor were guilty of negligence in taking their train out of Warsaw, because the appellant's counsel asserts their negligence in the strongest terms in his brief and points. I agree with him fully. There can be no doubt of it under the evidence. Their negligence was not intentional. It was the result solely of their forgetfulness for the time being that train second 28 was on the road and was to be passed by them at Warsaw, and that, under their orders, they should not leave Warsaw until its arrival. If this forgetfulness was negligence, or caused the act constituting negligence on their part, is not the same true as to the fireman? He must have forgotten the same thing. If he had remembered it, he would have called the attention of the engineer and conductor to the facts and the accident would have been avoided. If he had not forgotten, it was his duty to call their attention to the maters and therefore his negligence was the result of forgetfulness, the same as theirs. The verdict must have been based upon the contributory negligence of the fireman. No other reasonable result was possible. The plaintiff had the burden of showing absence of such negligence, and it clearly failed to support that burden. It can hardly be said there was any evidence of the absence of such negligence; but, even if there was evidence on both sides, the jury found for the defendants, and found correctly.

A great many questions are raised as to the defendant railroad's negligence, but I do not deem it necessary to discuss any of them, because, conceding its negligence the same as appellant concedes and alleges the negligence of the individual defendants, still contributory negligence, clearly established, defeats a recovery in the case against all the defendants. All concur, except KRUSE, J., who dissents on ground finding of contributory negligence was against the evidence.